UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : CRIMINAL NO. 20-CR-00066 (RDM) |
| | : |
| CHARLES KUMAR EDWARDS, | : |
| | : |
| Defendant. | : |

## STATEMENT OF OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by the undersigned attorneys, the United States Attorney for the District of Columbia, the Chief of the Criminal Division's Public Integrity Section, and the defendant CHARLES KUMAR EDWARDS, with the concurrence of his attorney Jonathan S. Jeffress, Esq., respectfully submit the following Statement of Offense in the above-captioned matter.

These facts do not constitute all the facts known to the parties concerning the charged offense. Rather, the following proffer is intended only to provide the Court with enough evidence to satisfy the mandate of Rule 11(b)(3) of the Federal Rules of Criminal Procedure and to demonstrate that sufficient facts exist that the defendant committed the offense to which he is pleading guilty. The parties agree and stipulate that had this matter gone to trial, the government's evidence would have shown, beyond a reasonable doubt, the following facts, among others:

### *Introduction*

1.  Defendant CHARLES KUMAR EDWARDS worked for the U.S. Department of Homeland Security – Office of Inspector General ("DHS–OIG") from in and around February 2008 to in and around December 2013, including as Acting Inspector General. Prior to working at DHS–OIG, EDWARDS worked at the Transportation Security Administration and the U.S. Postal Service – Office of Inspector General ("USPS–OIG"). After leaving DHS-OIG,

EDWARDS founded Delta Business Solutions, Inc. ("DBS"), a Maryland corporation, in and around September 2015. While at USPS-OIG, EDWARDS worked on USPS-OIG's case management system, which was used primarily for investigations and audits, as well as USPS-OIG's STARS database, as well as USPS-OIG's PARIS applications, which USPS-OIG employees used to interface with the STARS database. While at DHS-OIG, EDWARDS worked on the development of DHS-OIG's Enforcement Database System ("EDS").

2. Defendant MURALI YAMAZULA VENKATA worked as an Information Technology ("IT") Specialist in the IT Division at DHS–OIG Headquarters, located at 1120 Vermont Avenue, N.W., in Washington, D.C. Prior to joining DHS-OIG in June 2010, VENKATA worked at USPS–OIG. While at USPS–OIG, VENKATA worked on USPS–OIG's case management systems, including USPS–OIG's STARS database, as well as USPS–OIG's PARIS applications. As such, VENKATA was intimately familiar with USPS–OIG's PARIS applications and the STARS database. While at DHS–OIG, VENKATA did not request or receive any authorizations for outside employment.

3. Sonal Patel worked as an Enterprise Applications Branch Chief in the IT Division at DHS–OIG Headquarters. Patel oversaw the development and maintenance of EDS.

4. During his time at DHS-OIG, EDWARDS supervised Patel and VENKATA, both directly and indirectly. EDWARDS began supervising Patel at USPS-OIG when EDWARDS was the Director of Information Technology and the Deputy Chief Information Officer. In addition, at the start of his employment with DHS–OIG, EDWARDS signed a Computer Access Agreement in which he acknowledged, among other things:

> I will protect displayed, stored data, magnetic media, printouts in accordance with the highest level of data sensitivity contained on that media. I will follow OIG policy for transmitting sensitive data (such as name, ssn, home address, etc.) by utilizing WinZip or other OIG standard encryption software.

In his signed Computer Access Agreement, EDWARDS further acknowledged:

> I will not remove DHS computer systems or software from Government work spaces without express written permission. I understand I am personally responsible for providing physical security and keeping items under my exclusive control.

EDWARDS further acknowledged:

> I will not duplicate copyrighted software or remove copyrighted software from government equipment without the express written permission of the IT Director. I understand I will be personally liable for any software copyright violations committed on government systems under my control.

5.    Patel and VENKATA also signed Computer Access Agreements containing the same provisions described above.

### *Relevant Background*

6.    EDS was the case management system used by the DHS–OIG Office of Investigations. In 2008, DHS–OIG obtained ownership rights to the EDS source code. Since 2008, DHS–OIG has substantially modified and enhanced the EDS system. The initial contract for the EDS system cost DHS approximately $3,161,620.30. One substantial modification to EDS was the creation of the "eSubpoena" module. VENKATA was the principal developer of this eSubpoena module.

7.    DHS–OIG also owned and maintained Multiple Activation Keys and a Key Management Services Code associated with various software products. These Multiple Activation Keys and Key Management Services Code, which could be used to download software products without payment, were the property of DHS–OIG and the United States Government and had a value of approximately $350,000.

8.    As detailed below, Patel and VENKATA used their positions within DHS–OIG to access and transfer digital copies of (1) the EDS source code, which included the eSubpoena module, (2) DHS-OIG's database, which included the Personal Identifiable Information ("PII") of DHS employees, and (3) the PII of USPS employees. They did so multiple times and at

EDWARDS's behest for the purpose of providing the data to EDWARDS so that he could develop a commercially owned version of a case management system, referred to interchangeably as "22nd Century EDS," "EDS 2.0," "Next Gen EDS," or "Next Gen" (hereinafter, "Next Gen EDS"), to be offered for sale to government agencies. In addition, Patel gave EDWARDS Multiple Activation Keys and a Key Management Services Code so that EDWARDS could download software programs belonging to DHS–OIG.

9. Beginning in and around December 2015 and continuing for several months thereafter, EDWARDS and Patel had a series of communications and meetings with Witness One—an employee of the U.S. Department of Agriculture – Office of Inspector General ("USDA–OIG")—regarding the development, purchase, and use of Next Gen EDS.

10. On or about May 27, 2016, Patel copied DHS–OIG's EDS source code and database from the DHS–OIG computer network onto optical disks in order to provide them to EDWARDS to aid in his development of Next Gen EDS. On or about May 27, 2016, Patel also sent from her DHS–OIG government email account to her personal Yahoo! email account a government document containing detailed instructions for rebuilding DHS-OIG's EDS web applications from backup files onto another server. Also on or about May 27, 2016, Patel forwarded that document from her personal Yahoo! email account to EDWARDS's personal Verizon email account.

11. On or about May 30, 2016, EDWARDS, VENKATA, and Patel met at Patel's residence in Sterling, Virginia. During the meeting, VENKATA and Patel showed EDWARDS certain improvements to the EDS system, such as the addition of the eSubpoena module that VENKATA had developed. They also discussed technology for Next Gen EDS based on USPS–OIG's case management system and EDS.

12. On or about May 26, 2016, EDWARDS and Patel met with Witness One at a restaurant in the District of Columbia. At that meeting, EDWARDS and Patel discussed the

anticipated benefits of Next Gen EDS and the disadvantages of DHS-OIG's EDS. During the meeting, Patel stated that she could "tell him [EDWARDS] the concepts" of eSubpoena so that EDWARDS could incorporate eSubpoena into Next Gen EDS. Patel further stated that VENKATA could incorporate eSubpoena into Next Gen EDS. EDWARDS stated that he would give Patel his input so that the costs for USDA-OIG to purchase Next Gen EDS could be developed.

13. In and around June 2016, EDWARDS hired a software development company in India to assist in the development of Next Gen EDS (hereinafter, "Company A"). EDWARDS told these programmers that he would provide them with the eSubpoena requirements, a complete working version of the system, and the code, with the assistance of Patel.

14. On or about June 27, 2016, VENKATA sent technical instructions relating to the EDS system from his government email account to Patel's government email account. Patel then forwarded those instructions to her personal Yahoo! email account and, from there, to EDWARDS's personal Verizon email account.

15. On or about June 30, 2016, EDWARDS and Patel held an online meeting with employees of Company A. During the meeting, EDWARDS provided software developers with Company A remote access to the EDS source code and DHS-OIG database files that EDWARDS had received and saved on a non-government server.

16. On or about July 8, 2016, VENKATA sent to Patel, from his government email account, a government document containing the functional requirements for the eSubpoena module. That same day, Patel then forwarded the document to her personal Yahoo! email account and, from there, to EDWARDS's personal Verizon email account.

17. On or about July 9, 2016, EDWARDS and Company A signed an agreement for Company A to assist Defendant EDWARDS and DBS in the development of an Investigations

Management System for Offices of Inspectors General.

18. Sometime in and around early July 2016, EDWARDS provided a laptop computer to Patel, who then delivered it to VENKATA at DHS-OIG Headquarters. On or about July 13, 2016, VENKATA and Patel exchanged several text messages using their personal cell phones about copying files and source code for EDWARDS onto the laptop provided by EDWARDS. Specifically, Patel asked VENKATA to access the laptop to determine whether fresh downloads of DHS–OIG's EDS source code and database files were needed, or whether the laptop computer just needed to be configured.

19. Over the following two days, VENKATA reconfigured EDWARDS's laptop and provided updates about his work to Patel via text message using his personal cell phone. Upon completing the work, VENKATA sent text messages from his personal cell phone to EDWARDS to arrange for a rendezvous point to hand deliver the laptop, then ultimately delivered it to EDWARDS at a location in Virginia.

20. From on or about July 20, 2016, through August 5, 2016, EDWARDS and VENKATA exchanged numerous additional text messages pertaining to the development of Next Gen EDS, all of which were sent or received from VENKATA's personal cell phone. During this period, VENKATA also assisted EDWARDS in setting up and configuring a private server located in EDWARDS's residence for the purpose of developing Next Gen EDS. VENKATA was granted access to this server using login credentials that EDWARDS sent to him via text message to VENKATA's personal cell phone. VENKATA then periodically updated EDWARDS on his progress via text message, using his personal cell phone.

21. On or about August 1, 2016, EDWARDS wired $204.00 to Company A for "Payment for Services." On or about August 3, 2016, EDWARDS wired an additional $10,955.00 to Company A.

22.     On or about August 6, 2016, EDWARDS traveled from Washington Dulles International Airport to Bangalore, India, to meet with software developers from Company A for the purpose of developing Next Gen EDS. Because EDWARDS was having trouble getting the system to work on his home server, he asked for Patel to provide him with a copy of DHS–OIG's EDS source code and data. Patel met EDWARDS on the side of a road in Virginia as EDWARDS was on his way to Washington Dulles International Airport and provided to EDWARDS two DVDs containing DHS-OIG's EDS source code and data. EDWARDS also brought the reconfigured laptop computer, which VENKATA had delivered to him at a jewelry store on or about July 15, 2016, with him to India.

23.     On or about October 12, 2016, EDWARDS provided an update to Witness One indicating that his team ~~had built~~ *was building* the full version of the EDS system, which would be ready by mid-December, that he had addressed all of the concerns Witness One had raised in their meeting, and that the system had eSubpoena "just like DHS has." EDWARDS offered to meet Witness One to show him the "demo version" on a laptop or could allow Witness One to log into the live version, which was hosted on EDWARDS's server. Witness One requested a cost proposal from EDWARDS.

24.     On or about October 23, 2016, EDWARDS sent several WhatsApp messages to the software developers in India informing them that his "prospective contract" wanted to see the system under development in December but that the "prospective contract" wanted to meet in November to discuss the system.

25.     On or about November 2, 2016, EDWARDS met with Witness One at USDA Headquarters in the District of Columbia. During the meeting, EDWARDS stated that Next Gen EDS contained an eSubpoena module, which he described as the same as the DHS–OIG version but faster and with a better flow.

26. On or about November 8, 2016, EDWARDS participated in calls and online meetings with the developers in India.

27. On or about December 21, 2016, EDWARDS wired $5,000 to Company A for "Full Payment for Delta Business Website Development and Deployment."

28. Between on or about March 4, 2017, and March 25, 2017, EDWARDS and VENKATA continued to work together on building a private server in EDWARDS's residence for the purpose of developing Next Gen EDS. VENKATA performed this work via remote access using login credentials that EDWARDS sent to VENKATA's personal cell phone via text message. VENKATA again periodically updated EDWARDS on his progress via text message using his personal cell phone.

29. On or about March 21, 2017, after exchanging text messages with Patel using his personal phone, VENKATA received two DVDs from Patel containing the USPS–OIG database, EDS source code, scripts, and file server contents. VENKATA then delivered these DVDs to EDWARDS outside of DHS–OIG Headquarters. Upon receiving the DVDs, EDWARDS uploaded their content to a private server located in his residence, and VENKATA then accessed the server remotely to continue doing work on the server. On or about March 29, 2017, VENKATA used his personal cell phone to text Patel login credentials so that she, too, could remotely access EDWARDS's home server.

30. On or about March 30, 2017, EDWARDS again traveled to India to meet with the Indian software developers.

Respectfully submitted,

| | |
|---|---|
| MATTHEW M. GRAVES<br>UNITED STATES ATTORNEY<br>For the District of Columbia | COREY R. AMUNDSON<br>CHIEF<br>Public Integrity Section |
| By: /s/ J.P. Cooney | By:   /s/ Victor R. Salgado |

J.P. COONEY
D.C. Bar No. 494026
Assistant United States Attorney
Public Corruption and Civil Rights Section
555 4th Street, N.W.
Washington, D.C. 20530
(202) 809-3502
joseph.cooney@usdoj.gov

VICTOR R. SALGADO
D.C. Bar No. 975013
Senior Litigation Counsel
Public Integrity Section
Criminal Division
1301 New York Avenue, NW
Washington, D.C. 20004
(202) 353-4580
victor.salgado@usdoj.gov

## DEFENDANT'S ACCEPTANCE

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charges against me. It does not include all of the facts known to me regarding this offense. I have read every word of this Statement of Offense and have carefully reviewed every part of it with my attorney, Jonathan S. Jeffress, Esq. Pursuant to Federal Rule of Criminal Procedure 11, I fully understand the Statement of Offense and agree and stipulate to it knowingly, voluntarily, and without reservation, intending to be legally bound by it. I am fully satisfied with the legal services provided by my attorney in connection with this Statement of Offense and all matters related to it.

Date: 1/10/2022

Charles Kumar Edwards
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have reviewed every part of this Statement of Offense with my client, Charles Kumar Edwards, and fully discussed it with my client. It accurately and completely sets forth the Statement of Offense agreed to by the parties, and I concur in my client's desire to adopt and stipulate to this Statement of Offense.

Date: 1/10/2022

Jonathan S. Jeffress, Esq.
Attorney for Defendant